UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KATRINA F. WOOD,

    Plaintiff,

v.                                    Case No: 6:15-cv-1487-Orl-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## OPINION AND ORDER

Plaintiff, Katrina F. Wood, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") regarding her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I. Social Security Act Eligibility, Standard of Review, Procedural History, and Statement of Facts**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The

impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed applications for a period of disability, DIB and SSI on April 21, 2008, alleging disability commencing on November 19, 2007. (Tr. 54-55, 914-20). Plaintiff's claims were denied initially on October 28, 2008, and upon reconsideration on March 6, 2009. (Tr. 39-41, 45-47, 921-26). Plaintiff requested a hearing and, on October 19, 2010, a hearing was held before Administrative Law Judge ("ALJ") Gerald F. Murray. (Tr. 48, 933-84). On November 22, 2010, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr.10-21). Plaintiff requested a review of the hearing decision on January 26, 2011, which was denied by the Appeals Council on April 23, 2012. (Tr. 4A-7, 8).

Plaintiff appealed that decision to the United States District Court for the Middle District of Florida and, on September 16, 2013, the Court reversed and remanded the case for further administrative proceedings. (Tr. 1016-1033).

While Plaintiff's case was pending in federal court action, she protectively filed a new application with the SSA for a period of disability, DIB, and SSI. (Tr. 1122-25). Plaintiff's applications were denied initially. (Tr. 1039-42). While these claims were pending, on December 3, 2013, the Appeals Council remanded the original application back to an ALJ for further

proceedings. (Tr. 1034-38). The Appeals Council ordered the ALJ to "consolidate the claim files, create a single record, and issue a new decision on the consolidated claims." (Tr. 1038).

On April 21, 2015, a second administrative hearing was held, this time before ALJ Teresa J. McGarry ("the ALJ"). On April 29, 2015, Plaintiff signed a form to amend her onset date from November 19, 2007, to September 1, 2011. (Tr. 1111, 1126). On May 15, 2015, ALJ McGarry issued a fully favorable decision finding that Plaintiff had been disabled since her amended onset date of September 1, 2011. (Tr. 985-96).

On September 11, 2015, Plaintiff initiated the current action by Complaint (Doc. 1). The case is now ripe for review pursuant to 42 U.S.C. § 405(g).

**D. Statement of Facts**

In this case, Plaintiff's arguments do not relate to the ALJ's findings at step one through five of the sequential evaluation process. Instead, Plaintiff contends that remand is necessary due to the ALJ's actions prior to the entry of the favorable decision. To evaluate these arguments it is necessary to summarize the proceedings leading up to the ALJ's decision dated September 1, 2011.

As noted above, on September 16, 2013, Plaintiff's case was reversed and remanded by this Court for further administrative proceedings. (Tr. 1016-33).

The Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") Section I-2-8-18(B)(1) provides:

> Hearing offices will identify court remands through the Case Processing and Management System (CPMS). **Hearing offices must give priority attention to court remand cases**, with time-limited court remands receiving the highest priority. For priority and assignment of court remand cases, see HALLEX I-2-1-55.

(Emphasis added). HALLEX Section I-2-1-55(D) Special Situations That Require a Change in the Order in Which Cases Are Assigned provides:

> **4. Delayed Court Remand Case**
> A delayed court remand case is over 125 days old (counting from the date of the court's order) or a court remand that the AC remanded to an ALJ a second time. Flag and assign the case immediately. If the AC remanded a second time, assign to a different ALJ.

On Monday, January 20, 2014, Plaintiff's case became a "delayed court remand case" as this Court had remanded her case 126 days prior.

On September 22, 2014, Plaintiff's representative requested that her hearing be scheduled at the Orlando Hearing Office which is closer to her home than the Jacksonville Hearing Office (Tr. 1050- 51). Plaintiff's representative was noted that Plaintiff did not have a car and it was unlikely that she would be able to find someone to drive her all the way to Jacksonville. (Tr. 1050). Plaintiff's representative informed the ALJ that Plaintiff could not afford to continue to wait for a hearing as she was diagnosed with chronic renal failure and might have to go on dialysis. (Tr. 1050).

On October 14, 2014, the ALJ responded to the representative's letter dated September 22, 2014, and denied Plaintiff's request to have her case transferred to the Orlando Hearing Office (Tr. 1056). The ALJ noted "[h]aving reviewed the file it appears that Plaintiff arrives at her doctor's offices or the hospital by private car. There is evidence that she has been in two car accidents since 2011. There is no evidence to show she cannot obtain transportation to Jacksonville." (Tr. 1056).

On October 15, 2014, a fax cover sheet was sent to Plaintiff's representative from the Jacksonville Hearing Office requesting that Plaintiff's medical records be updated (Tr. 1055). It was noted that Plaintiff's "case is still in RTS [ready to schedule] but will be scheduled shortly." (Tr. 1055).

On November 6, 2014, Plaintiff's representative wrote a letter to the ALJ regarding her denial of the request to transfer Plaintiff's case to the Orlando Hearing Office (Tr. 1059). The

representative stated that the ALJ continued to deny all of the requests to transfer cases for good cause with no consideration of the provisions of 20 C.F.R. § 404.936 and the HALLEX. (Tr. 1060). The representative further noted the reasons that the ALJ had denied the requests for transfer:

> 1. You can walk 190 miles round trip from Deland to Jacksonville;
> 2. Your mother, who lives somewhere else in Volusia County, has a car.
> 3. If you request a hearing, you have the absolute obligation to get there regardless of where Social Security schedules it and regardless of the provisions in 20 C.F.R. § 404.936 and the HALLEX.

(Tr. 1060). The representative further noted that there were now two additional reasons that she was denying the requests for transfer:

> 4. Someone drove you to the hospital in Volusia County;
> 5. You were in someone else's car that was in an accident within the last three years.

(Tr. 1060). The representative renewed his request that Plaintiff's case be transferred to Orlando. (Tr. 1061). He further requested that the ALJ recuse herself from hearing Plaintiff's case "on the basis of bias, retaliation, and a lack of independence" and the fact that Plaintiff's representative had filed a judicial misconduct complaint against her which was still pending investigation. (Tr. 1061).

The same day, Plaintiff's representative wrote a second letter to the ALJ regarding Plaintiff's Halifax Health records that were going to cost $242.15 to get copied. (Tr. 1057-1058). Plaintiff's representative stated that Plaintiff did not have the money to pay for the records so the representative requested that the hearing office staff request the records "as required by the HALLEX." (Tr. 1057).

On November 13, 2014, the ALJ responded to the representative's November 6, 2014 letter. (Tr. 1062). She again denied the request to transfer Plaintiff's case to the Orlando Hearing Office. (Tr. 1062). The ALJ further denied the representative's request to recuse herself from the

case because he had "not presented sufficient, accurate facts to support either request." (Tr. 1062). She also denied the representative's request to order and pay for medical records that Plaintiff could not afford to obtain. (Tr. 1062).

On November 18, 2014, Plaintiff's representative responded to the ALJ's letter and noted that he had already requested the medical records. (Tr. 1063). The representative noted that the issue was what needed to be done to get the Jacksonville ODAR to pay for the medical records as required by 20 C.F.R. § 404.1514. (Tr. 1063).

Plaintiff provides that her counsel, on February 9, 2015, requested that the ALJ issue a subpoena to Halifax Health:

> for the production of all records related to all treatment of Ms. Wood since November 22, 2010. Ms. Wood has received treatment relevant to her disabling medical impairments at Halifax Health since that time. I have requested these records, but Halifax Health will not release them without payment of $242.15 which Ms. Wood cannot afford.

(Doc. 34-1).

On February 20, 2015, the Jacksonville ODAR issued a Notice of Hearing scheduling Plaintiff's administrative hearing for April 21, 2015. (Tr. 1078-93). The hearing was scheduled to be held in Jacksonville. (Tr. 1078).

On March 3, 2015, Plaintiff's representative wrote to the ALJ to confirm receipt of the Notice of Hearing and to advise her that Plaintiff was unable to go to Jacksonville to attend her hearing. (Tr. 1065). He noted that Plaintiff was "currently undergoing dialysis and has the transportation difficulties" that he had already brought to her attention. (Tr. 1065). He requested that Plaintiff be allowed to attend the hearing by video teleconference, or as a last resort, appear by phone. (Tr. 1065). The representative noted that Plaintiff was:

> in desperate need of her benefits and the medical coverage that would come with them. I do not want to cause additional delay. Ms. Wood filed

>her claim April 21, 2008. The Court remanded her case on September 16, 2013. . . . I know you are reluctant to grant any accommodation to any of my clients resulting in a cycle of denials and appeals, but I am hoping you will be able to consider the possibility that someone on dialysis probably meets a listed impairment and continued unnecessary delay will cause serious undue hardship on a woman who is already seriously ill.

(Tr. 1065).

On March 17, 2015, the ALJ responded to the representative's March 3, 2015 letter. (Tr. 1066). She noted that if he "submit[ted] a letter from Plaintiff's nephrologist that she is in dialysis at this time, the number of times a week, and if this treatment will continue through April, I will grant the request to let her appear by telephone." (Tr. 1066). The ALJ noted that she had retained non-examining testifying medical experts to advise her regarding Plaintiff's case and the issue began with her request for benefits going back to 2009. (Tr. 1066). She noted that if Plaintiff's representative "wish[ed] to propose an amended onset date to reflect her current medical condition, I will be glad to review it." (Tr. 1066).

On April 8, 2015, Plaintiff's representative wrote to the ALJ and requested that she issue subpoenas for the production of all records relating to treatment and testing of Plaintiff from five doctors and one hospital. (Tr. 1103-04). He noted that Plaintiff was unable to afford to purchase these records. (Tr. 1103). The representative requested that the subpoenas be issued as soon as possible so that the case was fully developed at the time of the hearing. (Tr. 1104). He noted that "Ms. Wood has waited a long time for this hearing. She has stage four renal failure and is in desperate need of her benefits and medical coverage. Any delay of the upcoming hearing will cause extreme hardship." (Tr. 1104).

On April 8, 2015, Plaintiff's representative also supplied the ALJ with the information she requested regarding Plaintiff's ongoing dialysis. (Tr. 1106).

On April 9, 2015, the ALJ responded to the representative's April 8, 2015 letter and noted that she:

> already ruled on your request that this office obtain records; that duty rests with your office. However, I doubt you can obtain the records in time to get them to the experts, so if you wish to supplement after the hearing, we can arrange to send the records to the experts when you obtain them. I doubt the records will be required, as I believe the experts will find disability at this time. The question is the onset date. I asked you last month if you wish to propose an amended onset date that could be sent to the experts in advance. The internist refused to accept the case and I am trying to find someone who will review that portion of the record by interrogatory. The hearing will proceed with the other two experts (psychologist and orthopedist) unless we can agree on an amended onset date.

(Tr. 1107).

On April 21, 2015, the day of Plaintiff's hearing, the ALJ wrote a letter to Plaintiff's representative noting that the psychologist that was scheduled to testify that day was not attending due to his spouse having non-elective surgery. (Tr. 1108).

At the hearing, after the non-examining consultant testified, the ALJ stated that she "intended to get this case done in one hearing, and that's not going to happen" because of the other two non-examining consultants being unable to testify. (Tr. 1894). The ALJ stated that she would get two more experts and then have another hearing. (Tr. 1895). Plaintiff could appear telephonically or she would find a date for Plaintiff to appear in Port Orange. (Tr. 1895). The ALJ stated that she would not transfer the case to the Orlando ODAR because it did not belong to the Orlando jurisdiction. (Tr. 1895). The ALJ noted that she would travel to Orlando to hold the hearing but "that's going to greatly delay this case." (Tr. 1895). Plaintiff's representative noted that the federal court had remanded Plaintiff's case a long time ago. (Tr. 1895). The following exchange then took place between the ALJ and Plaintiff's representative:

> Atty: I mean, you know, my client has stage 4 renal failure.

ALJ: Sir –

Atty: I mean, you must know the –

ALJ: Simple question.

Atty: -- severity of that.

ALJ: Simple question. If you want –

Atty: Can I give you an answer?

ALJ: Yes, please.

Atty: There's a no – there's no right answer for me. You're going to torture her and make us wait even longer, or –

ALJ: Please, please.

Atty: -- she waives her right to due process.

ALJ: Please, sir, I don't have opinions yet from everyone. I'm not granting the case at this point in time when I don't have medical opinion. I told you in my letter, I have no problem with the fact that she's currently disabled. But this case goes back to 2008.

Atty: Right.

ALJ: And the conditions that exist right now did not exist to the degree that they are at in 2008. So I need medical opinions.

Atty: But if [I] could just try, try to make our case. The treating physician, back in '08 and '09 –

ALJ: You're talking about Dr. Mickey?

Atty: – and 2010 – yes.

ALJ: The family practice doctor who saw her for a short period of time –

Atty: Who was her treating doctor.

ALJ: – (INAUDIBLE) giving –

Atty: Who knows a lot –

ALJ: I'm not –

Atty: – more about her than [any] of these three witnesses that you're so intent on calling.

ALJ: Well, this doctor disagreed with Dr. Mickey's orthopedic thing. And he's an orthopedic specialist. So yes, I'm going to –

Atty: No, he didn't –

ALJ: – listen to all the doctors.

. . .

Atty: Well, why don't you just (INAUDIBLE) Dr. Mickey? I mean, if – you know, instead of just rejecting over and over again that – the opinion of the treating physician, and finding these doctors all over the country who haven't even seen a patient and, you know, had a practice going in nearly 10 years, why don't you subpoena the treating physician?

ALJ: Because Dr. Mickey is no longer the treating physician. He saw her for a short –

Atty: But he was back then.

ALJ: For a short period of time.

Atty: But he was – that was a period of time, the relevant time, not 2015.

. . .

ALJ: I have the right, Mr. Culbertson, to question that doctor's opinion. . . . I'm going to have experts. Do you want to have them appear on the record, vocally, so that you can question them? If so, then I need to set this up for another hearing.

Atty: So you're going to do that anyway?

ALJ: No. If you agree to interrogatories, I will copy (INAUDIBLE) –

Atty: No (INAUDIBLE).

ALJ: All right. Then – yeah, then we're going to have to have another hearing.

CL: How long – do you know how long that I have to wait for another hearing?

> ALJ: No, ma'am. I cannot give you an honest answer to that.
>
> Atty: You have no control over your docket that you could give us some answers?
>
> ALJ: My docket, my docket right now is booked through June. I have an obligation in July that I have to take a week or two off for. . . .
>
> CL: Now, I have, I have a question.
>
> ALJ: Yes, ma'am.
>
> CL: This, this hearing that I have to wait for, this is for the – all of the back pay that I want?
>
> ALJ: Yes, ma'am.
>
> CL: Okay. So what if I say to give me a hearing on the information that you have on me right now, as far as what I'm going through right now?
>
> Atty: I think she's asking if – I mean, she's in desperate need. Again, I don't know that you appreciate what people have to go through.
>
> ALJ: Oh, please.
>
> Atty: She's got stage 4 –

(Tr. 1896-1901). The ALJ and Ms. Wood's representative continued their conversation. (Tr. 1901).

The following discussion then ensued with Ms. Wood:

> ALJ: Ms. Wood, Ms. Wood?
>
> CL: Yes?
>
> ALJ: Are you asking that you be found disabled as a timeframe other than 2008?
>
> CL: Yes. Because –
>
> ALJ: You have heard the doctor –
>
> CL: – (INAUDIBLE) right now, Your Honor, I cannot go on like this. I cannot do it. July, I will be destitute.
>
> ALJ: Ma'am, have you –
>
> CL: (INAUDIBLE) –

- 13 -

> ALJ: – consulted with [your representative] about this?
>
> Atty: I don't think – again, I spoke to her, and she does not waive her right to those back benefits. But again, you're putting her in such a difficult situation, Your Honor. You're asking her to either continue suffering or –
>
> ALJ: She just said she is willing –
>
> Atty: – give up –
>
> ALJ: – to waive her right to past due benefits.
>
> Atty: You asked – but again, it's like you're just not listening to what I'm saying.
>
> ALJ: I am listening to you.
>
> Atty: She's doing that based on the fact that she can't get a fair hearing on, on the merits. And then you're going to make her wait even more, in addition to what you, not the other judges, you have already made her wait.

(Tr. 1901-1902). The ALJ later reiterated that she could not tell Plaintiff when she would be able to hold another hearing in her case (Tr. 1904-1905).

On April 22, 2015, Plaintiff's representative sent a letter to the ALJ stating that he had spoken with Plaintiff about a possible amended onset date and that Plaintiff "indicated she could agree to an onset date of September 1, 2011." (Tr. 1109). Plaintiff's representative ended the letter noting that "time is of the essence for Ms. Wood." (Tr. 1109).

On April 23, 2015, the ALJ responded to the representative's letter and granted Plaintiff's request to amend her onset date to September 1, 2011 (Tr. 1110). She requested that Ms. Wood provide a signed amended onset date form in which she acknowledged the consequences of this request. (Tr. 1110).

On April 29, 2015, Plaintiff signed the form to amend her onset date from November 19, 2007 to September 1, 2011. (Tr. 1111, 1126). On May 15, 2015, the ALJ issued her fully favorable decision

finding that Ms. Wood had been disabled since her amended onset date of September 1, 2011. (Tr. 985-996).

**II.     Analysis**

Plaintiff's presents three issues on appeal: (1) whether the ALJ erred by denying Plaintiff her right to a timely and fair hearing as required by the Due Process Clause of the Fifth Amendment to the United States Constitution and improperly coerced Plaintiff into amending her alleged onset date; (2) whether the ALJ erred by improperly denying Plaintiff's right to present evidence and subpoena witnesses to testify regarding her disability from November 19, 2007, through August 31, 2011; and (3) whether the case should be reversed and remanded for an immediate award of benefits.  The Court will address each issue below.

> **1) Whether the ALJ erred by denying Plaintiff her right to a timely and fair hearing as required by the Due Process Clause of the Fifth Amendment to the United States Constitution and improperly coerced Plaintiff into amending her alleged onset date.**

Plaintiff argues that the ALJ coerced Plaintiff into amending her onset date to September 1, 2011. (Doc. 34 p. 21). Plaintiff contends that the ALJ's actions caused her to either accept an amended onset date and begin receiving benefits or wait an undetermined length of time to get a new hearing. (Doc. 34 p. 22). Plaintiff argues that the ALJ's actions reasonably led her to believe that she would not receive a fair hearing, as the ALJ refused to obtain highly relevant medical records, subpoena or even recontact her treating doctor; refused to recuse herself from hearing the case, despite a pending judicial misconduct complaint; and could not even guess when a supplemental hearing would be held. (Doc. 34 p. 22). In addition, Plaintiff contends that the ALJ's tone and demeanor at the hearing further demonstrates that Plaintiff did not receive a full and fair hearing and was coerced into amending her alleged onset date. (Doc. 34 p. 22).

In response, Defendant argues that Plaintiff's contentions are without merit. (Doc. 38 p. 3). Defendant argues that the ALJ was entitled to a presumption of honesty and integrity and Plaintiff has failed to overcome this presumption. (Doc. 38 p. 5). Further, Defendant argues that Plaintiff voluntarily amended her onset date after ample time to discuss and receive advice from her counsel. (Doc. 38 p. 8).

In this case, the Court finds that the ALJ did not violate Plaintiff's right to due process nor coerce her into amending her alleged onset date. Due process demands impartiality on the part of those who function in judicial or quasi-judicial capacities. *Schweiker v. McClure*, 456 U.S. 188, 195 (1982). A presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies. *Id.* at 195-96; *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification. *Schweiker*, at 195-96. The burden of establishing a disqualifying interest rests on the party making the assertion. *Id.*

Here, Plaintiff has failed to overcome the presumption that the ALJ was not biased and unfair in her treatment of Plaintiff. While Plaintiff notes that her counsel had filed a judicial misconduct complaint against the ALJ, Plaintiff provided no explanation as to the basis of the judicial misconduct complaint, nor cited to any authority showing that the ALJ was required to recuse.

Further, there is no evidence that the ALJ coerced Plaintiff to amend her alleged onset date. Plaintiff made the decision to amend her alleged onset date after discussing the matter with her attorney. The record shows that on April 22, 2015, the day after the administrative hearing, Plaintiff counsel wrote a letter to the ALJ providing that

> As you requested, I have spoken with my client, Katrina Wood, about a possible amended onset date. Ms. Wood has indicated she could agree to

> an onset of September 1, 2011. It is my understanding her date last insured is September 30, 2011. If you cannot agree with that date, but feel the evidence supports another date, please let me know. As we discussed yesterday, time is of the essence for Ms. Wood.

(Tr. 1109). On April 23, 2015, the ALJ wrote a letter to Plaintiff's counsel providing that she believed that Plaintiff was incapable of even sedentary work by September 1, 2011, and that she would grant Plaintiff's request to amend the onset date. (Tr. 1110). The ALJ asked Plaintiff' counsel to provide a signed amended onset date form in which Plaintiff acknowledges the consequences of her request. (Tr. 1110). Plaintiff, with the help of her attorney, completed a "Request to Amend Onset Date" form, indicating her decision to amend her alleged onset date. (Tr. 1111). The form provides that "[t]he undersigned Attorney/Representative certifies that the claimant has been advised of and understands the effects of this amendment to the application herein." (Tr. 1111).

The Court recognizes the frustration caused by the delay in this case. However, there is no evidence suggesting that the ALJ purposefully delayed this case to force Plaintiff to change her alleged onset date. Plaintiff has failed to show that the ALJ committed any legal error by seeking testimony from experts or was at fault for the expert's failure to provide testimony at the April 21, 2015 administrative hearing. While Plaintiff testified that her health and financial situation were serious in April 2015, the ALJ still had the duty to develop the record to the extent necessary to decide Plaintiff's claim, which had the original alleged onset date in 2007. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276.

Finally, the fact that Plaintiff's case was a "delayed court remand case" pursuant to the HALLEX does not demonstrate that the ALJ acted improperly in this case. As Defendant notes, the Supreme Court has held that a social security claims manual has no legal force and is not binding on the Commissioner because the manual was not a regulation. *See Schweiker v. Hansen*,

450 U.S. 785, 789-90 (1981). While Plaintiff's case was indeed behind schedule, it does not follow that Plaintiff's due process rights were violated or that the case was delayed for purposes of coercing an alleged onset date amendment. While the circumstances may have made Plaintiff's decision to amend her onset date difficult, it was not coerced.

Plaintiff has failed to demonstrate that her due process rights were violated by the ALJ or that the ALJ coerced her into amending her alleged onset date.

**2) Whether the ALJ erred by improperly denying Plaintiff's right to present evidence and subpoena witnesses to testify regarding her disability from November 19, 2007, through August 31, 2011.**

Plaintiff argues that the ALJ failed to fully and fairly develop the record by improperly denying Plaintiff's requests for the hearing office staff to secure medical records from Halifax Health and her request for the ALJ to issue subpoenas for the production of all records relating to treatment and testing of Plaintiff from five doctors and one hospital. (Doc. 34 p. 22-23). Plaintiff explains that she was unable to afford the cost of obtaining these records and the ALJ's refusal to obtain records prevented her from receiving a fair hearing. (Doc. 34 p. 22-23). Plaintiff argues that she was prejudiced by the ALJ's failure to obtain the records, as the ALJ did not have all of the relevant medical records from the time period at issue, namely the records from Halifax from November 22, 2010 up through the date of the hearing. (Doc. 34 p. 25-26). Further Plaintiff argues that the ALJ's insistence to obtain testimony from three non-examining state agency consultants, while making no effort to recontact Plaintiff's treating physician Dr. Mickey, suggest that the ALJ was improperly attempting to justify, by whatever means necessary, a preordained conclusion that Plaintiff was not disabled before 2011. (Doc. 34 p. 29).

In response, Defendant argues that given Plaintiff received a fully favorable decision for the time period she requested to be reviewed, beginning September 1, 2011, her argument

regarding Dr. Mickey is moot. Further, Defendant argues that it was within the ALJ's discretion to subpoena or recontact a medical source and the ALJ committed no error by failing to recontact Dr. Mickey. (Doc. 38 p. 8).

Here, the Court agrees with Defendant that the issue of whether the ALJ erred in developing the record is moot given Plaintiff's voluntary decision to amend her alleged onset date and the ALJ's subsequent fully favorable decision. In any event, the Court rejects Plaintiff's argument that the ALJ's decision to obtain testimony from non-examining experts and to not recontact Dr. Mickey demonstrates that the ALJ had a preordained conclusion and violated Plaintiff's due process rights. As Defendant notes, the regulations provide that it is within the ALJ's discretion to subpoena or recontact a medical source. See 20 C.F.R. §§ 404.950(d)(2), 416.1450(d)(2) (when it is reasonably necessary for the full presentation of a case, the ALJ <u>may</u> issue subpoenas for the appearance and testimony of witnesses and for the production of records that are material to an issue at the hearing); 20 C.F.R. §§ 404.1520b(c)(1), 416.1450b(c)(1) (if the evidence is insufficient to determine whether the claimant was disabled or not disabled, the ALJ <u>may</u> recontact a medical source) (emphasis added). Plaintiff has made no showing that it was improper for the ALJ to consult experts in assisting her to make her decision. Further, there is no evidence that the ALJ attempted to improperly delay the case by soliciting testimony from experts, nor that the ALJ played a part in the inability of the psychologist or internist's inability to testify at the April 21, 2015 hearing.

**3) Whether the case should be reversed and remanded for an immediate award of benefits.**

As the Court has rejected Plaintiff's arguments that the ALJ violated Plaintiff's due process rights and coerced her into changing her alleged onset date, the Court rejects Plaintiff's argument that this case should be reversed and remanded for an immediate award of benefits.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 20, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties